# 13-2514-cv

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

LINDA CRAWFORD,

*Plaintiff-Counter-Defendant-Appellant,*

*v.*

TRIBECA LENDING CORPORATION,
FRANKLIN CREDIT MANAGEMENT CORPORATION

*Defendants-Counter-Claimants-Appellees,*

*and*

LENDERS FIRST CHOICE AGENCY, INC.,

*Defendant-Appellee.*

## REPLY BRIEF FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLANT LINDA CRAWFORD

Krishnan S. Chittur
CHITTUR & ASSOCIATES, P.C.
*Attorneys for*
    *Plaintiff-Counter-Defendant-Appellant*
Central Westchester Business Park
500 Executive Blvd., Suite 305
Ossining, New York 10562
Tel. (914) 944-4400

TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.  Ms. Crawford Has Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.  Chapter 13 Debtor May Have Standing For Undisclosed Claims. . . . 4

    B.  Defendants Misread *Currithers*. . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.  Defendants' Reliance Upon *Kunica* is Misplaced. . . . . . . . . . . . . . 6

    D.  The 2006 Non-Disclosure Was Inadvertent. . . . . . . . . . . . . . . . . . . . 7

II. Defendants Ignore Section 349's Revesting Provisions. . . . . . . . . . . . . . . 8

III. Judicial Estoppel Is Inapplicable. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    A.  No Inconsistent Position. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

    B.  No "Adoption" By Court of Earlier Position. . . . . . . . . . . . . . . . . . 11

    C.  Defendants Misconstrue the "Unfair Advantage" Requirement. . . . 12

    D.  Ms. Crawford Was Unaware of Her Claims in 2006. . . . . . . . . . . . 14

IV. At the Very Least, Ms. Crawford Should Be Granted Relief Under Rule
    60(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

V.  Summary Judgment On Liability Should Be Granted to Ms. Crawford. . . 17

    A.  Defendants Did Not Designate Kollers/Decarolis As Their 30(b)(6)
        Representatives, And Cannot Escape the Consequences Of Their
        Refusal to Provide Testimony. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

i

B.     Litigation-Ending Sanctions Were Appropriate.. . . . . . . . . . . . . . . 19

VI.   Defendants' Other Objections Are Unavailing.. . . . . . . . . . . . . . . . . . . . . 20

A.    Defendants Waived the Defense of Statute of Limitations By Failing to Plead It In Their Answer. . . . . . . . . . . . . . . . . . . . . . . . . 20

B.    In Any Event, The Claims Are Not Time-Barred.. . . . . . . . . . . . . . 20

C.    *Res Judicata* Is Inapplicable.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

D.    Defendants Misconstrue the ECOA Claim.. . . . . . . . . . . . . . . . . . . 23

E.    Ms. Crawford's RICO Claims Are Proper. . . . . . . . . . . . . . . . . . . . 24

1.    The "Pattern" Requirement is Met.. . . . . . . . . . . . . . . . . . . 24

2.    A Racketeering "Enterprise" Existed.. . . . . . . . . . . . . . . . . 26

3.    Defendants Managed/Operated the Enterprise. . . . . . . . . . . 28

4.    Defendants Are Liable For Conspiracy under 1962(d). . . . . 29

F.    Defendants Are Liable for Fraud. . . . . . . . . . . . . . . . . . . . . . . . . . . 30

G.    At the Very Least, Defendants Are Liable for Negligent Misrepresentation.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

H.    Defendants Are Liable Under Section 349, G.B.L.. . . . . . . . . . . . . 32

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

## TABLE OF AUTHORITIES

*Anderson News, L.L.C. v Am. Media, Inc.*,
680 F3d 162, 183 (2d Cir 2012), *cert denied*, 133 S Ct 846 (2013).. . . . . . . . . . . 29

*Assn. Resources, Inc. v Wall*,
298 Conn 145, 166 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*Au Bon Pain Corp. v. Artect, Inc.*,
653 F.2d 61, 65 (2d Cir.1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ayazi v New York City Bd. of Educ.*,
315 Fed Appx 313, 315 (2d Cir 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Azuike v BNY Mellon*,
2013 WL 3917264 (S.D.N.Y. July 30, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Best v MetLife Auto and Home Ins. Co.*,
7 Misc 3d 242, 244 (Sup Ct 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Burnes v Pemco Aeroplex, Inc.*,
291 F3d 1282, 1286 (11th Cir 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*CARCO GROUP, Inc. v Maconachy*,
718 F.3d 72, 80 (2d Cir 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Chartschlaa v Nationwide Mut. Ins. Co.*,
538 F3d 116, 12o (2d Cir 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Citibank N.A. v City of Burlington*,
2013 WL 5739757 (D. Vt. Oct. 22, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Coffaro v Crespo*,
721 F Supp 2d 141, 147 (E.D.N.Y. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Collisson & Kaplan v. Hartunian*,
26 Cal. Rptr. 2d 786, 790 (Cal. App. 2 Dist. 1994). . . . . . . . . . . . . . . . . . . . . . 30

*Columbus McKinnon Corp. v. HealthNow New York, Inc.*,
2006 WL 2827675, 11 (W.D.N.Y. Sep 29, 2006). . . . . . . . . . . . . . . . . . . . . . . . . 25

*Connors v. Lexington Ins. Co.*,
666 F.Supp. 434, 453 (E.D.N.Y.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Costa v. Mauro Chevrolet, Inc.*,
390 F.Supp.2d 720, 728 (N.D.Ill. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Cowling v Rolls Royce Corp.*,
2012 WL 4762143, *4 (S.D. Ind Oct. 5, 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Currithers v FedEx Ground Package Sys., Inc.*,
2012 WL 380146 (E.D. Mich Feb. 6, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Diaz v Goord*,
2011 WL 6012609, *2 (W.D.N.Y. Dec. 1, 2011). . . . . . . . . . . . . . . . . . . . . . . . . 21

*Doe v. Constant*,
354 Fed.Appx. 543, 545, 2009 WL 4255527, 1 (2nd Cir. 2009). . . . . . . . . . . . . . 20

*Dorado v Shea Homes Ltd. Partnership*,
2011 WL 3875626 (E.D. Cal Aug. 31, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Eastman v Union Pac. R. Co.*,
493 F3d 1151, 1159 (10th Cir 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Eastman v. Union Pac. R.R.*,
493 F.3d 1151, 1156 (10th Cir.2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*EDP Medical Computer Systems, Inc. v. U.S.*,
480 F.3d 621, 626 (2nd Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Ellington Long Term Fund, Ltd. v. Goldman, Sachs & Co.*,
2010 WL 1838730, 2 (S.D.N.Y. May 4, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Emerald Asset Advisors, LLC v Schaffer*,
2013 WL 5308800, *6 (E.D.N.Y. Sept. 18, 2013). . . . . . . . . . . . . . . . . . . . . . . . . 32

*Exxon Mobil*, 544 U.S. at 293. *Scherer v. Equitable Life Assurance Soc'y*,
347 F.3d 394, 398 (2d Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Gagan v. American Cablevision*,
77 F.3d 951, 961 (7th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Gochenour v Cleveland Terminals Bldg. Co.*,
118 F2d 89, 94 (6th Cir 1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Grainger v Meritan, Inc.*,
2011 WL 824484 (S.D. Miss Mar. 2, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Grammer v. Turits*,
706 N.Y.S.2d 453, 455 (2 Dept. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Hamilton v State Farm Fire & Cas. Co.*,
270 F3d 778, 784 (9th Cir 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hampshire v Maine*,
532 US 742, 750-51 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Hexagon Packaging Corp. v. Manny Gutterman & Associates, Inc.*,
1997 WL 323501, 12 (N.D.Ill. Jun 9, 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Hirsch v Citibank, N.A.*,
2013 WL 5716397 (2d Cir Oct. 22, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*HPG Corp. v Aurora Loan Services, LLC*,
436 B.R. 569, 577-79 (E.D. Cal 2010) .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In Liquid Air Corp. v. Rogers*,
834 F.2d 1297, 1300 (7th Cir. 1987), *cert. denied*, 492 U.S. 917 (1989). . . . . . . . 25

v

*In re Adelphia*,
634 F.3d 678, 695-96 (2nd Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*In re Angelo*,
480 B.R. 70, 94 (Bankr D Mass 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Costello*,
255 B.R. 110 (E.D.N.Y. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Desormes,*
2012 WL 4106765 (D. Conn. Sep. 18, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Flugence*,
738 F3d 126 (5th Cir 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 14

*In re Gen. Growth Properties, Inc.,*
409 B.R. 43, 69 (Bankr S.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Great Atl. & Pac. Tea Co., Inc.,*
526 Fed Appx 25, 28-29 (2d Cir 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Kane*,
628 F3d 631, 638 (3d Cir 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Marfin Ready Mix Corp.*,
220 B.R. 148 (E.D.N.Y. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Intellivision v Microsoft Corp.*,
484 Fed Appx 616, 619 (2d Cir 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Jackson v Hancock & Can., L.L.P.*,
245 S.W.3d 51, 57 (Tex App 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kropelnicki v Siegel*,
290 F3d 118, 130 (2d Cir 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v Gen. Motors Corp.*,
337 F3d 314, 319 (3d Cir 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

*Kunica v. St. Jean Financial*,
233 B.R. 46 (S.D.N.Y. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*McKithen v Brown*,
481 F3d 89, 104 (2d Cir 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Motorola Credit Corp. v Uzan*,
561 F3d 123, 129 n5 (2d Cir 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Myers v Bimbo Bakeries USA, Inc.*,
2011 WL 1240095 (E.D.N.Y. Feb. 10, 2011), *report and recommendation adopted*, 2011 WL 1211603 (E.D.N.Y. Mar. 30, 2011) . . . . . . . . . . . . . . . . . . . 12

*Nationwide Assocs. Inc., v. Epstein*,
24 A.D.3d 738 (2nd Dep't 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*,
392 F.3d 520, 526 (2d Cir.2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Neely v RMS Residential Mortg. Solution, L.L.C.*,
2013 WL 752636, *6 (E.D.N.Y. Feb. 26, 2013) . . . . . . . . . . . . . . . . . . . . . . . 10

*Negron v Weiss*,
2006 WL 2792769 (E.D.N.Y. Sept. 27, 2006) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Nelson v City of Davis*,
571 F3d 924 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Olick v. Parker & Parsley Petroleum Co.*,
145 F.3d 513, 515 (2nd Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

*Olive Can Co. Inc v. Martin*,
906 F.2d 1147, 1151 (7th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Omegbu v Nicholson*,
283 Wis 2d 508 (Wis. App. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*OSRecovery, Inc. v. One Groupe Intern., Inc.*,
380 F.Supp.2d 243, 245 (S.D.N.Y. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Overall v. Estate of Klotz*,
52 F.3d 398, 403 (2d Cir.1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Parker v Hoefer*,
2 N.Y.2d 612, 616 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Persaud v. Pharsi*,
70 A.D.3d 660, 661 (2 Dept. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Potruch & Daab, LLC v Abraham*,
97 A.D.3d 646, 647 (2d Dept 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Price v. Kuchaes*,
950 N.E.2d 1218, 1227 (Ind. App. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Reilly v. Natwest Markets Group*,
181 F.3d 253 (2nd Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Resnick v. Vantage Deluxe World Travel, Inc.*,
2004 WL 2601548, 1  (S.D.N.Y. Nov 12, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Salahuddin v Harris*,
782 F2d 1127, 1132 (2d Cir 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Schafer v Decision One Mortg. Corp.*,
2009 WL 1532048 (E.D. Pa May 29, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*See D & S Auto Parts, Inc. v. Schwartz*,
838 F.2d 964, 967 (7th Cir.1988), *cert. denied*, 486 U.S. 1061 (1988). . . . . . . . . . 29

viii

*Shewmaker v. Etter*,
644 N.E.2d 922, 931 (Ind. App. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Spagnola v. Chubb Corp.,*
574 F.3d 64, 74 (2d Cir.2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Stoyanovich v. Fine Art Capital LLC*,
2007 WL 2363656, 3 (S.D.N.Y. Aug 17, 2007). . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Superintendent of Ins. for N.Y. v. Ochs (In re First Cent. Fin. Corp.)*,
377 F.3d 209, 217-18 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Taylor v City of New York*,
958 N.Y.S.2d 311 (N.Y. Sup. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Thomas v JP Morgan Chase, N.A.*,
2012 WL 2872164 (E.D.N.Y. July 11, 2012), *affd sub nom. Thomas v Barrett, Daffin, Frappier, Turner & Engel LLP*, 532 Fed Appx 10 (2d Cir 2013) . . . . . . . 10

*Thompson v Donahoe*,
2013 WL 3286196 ("N.D. Cal June 27, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Truck-Lite Co., Inc. v. GS1 US, Inc.*,
2008 WL 833498, 2 (W.D.N.Y. Mar 27, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . 32

*U.S. v. Eisen*,
974 F.2d 246, 253 (2nd Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*U.S. v. Payne*,
591 F.3d 46, 60 (2nd Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*U.S. v. Pizzonia*,
577 F.3d 455, 463 (2nd Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v Smith*,
2013 WL 6576791 (S.D.N.Y. Dec. 4, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Alfano*,
34 F. Supp. 2d 827, 838 (E.D.N.Y. 1999).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Coonan*,
938 F.2d 1553, 1559-60 (2d Cir.1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Eppolito*,
543 F.3d 25, 50 (2d Cir.2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Martino*,
648 F.2d 367, 382-83 (5th Cir.1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Turkette*,
452 U.S. 576, 583 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Veh. Mkt. Research, Inc. v Mitchell Intern., Inc.*,
2012 WL 5512340 (D Kan Nov. 14, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Veltri v. Bldg. Serv. 32b-J Pension Fund*,
393 F.3d 318, 322 (2d Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*White v. Wyndham Vacation Ownership, Inc.*,
617 F.3d 472, 480 (6th Cir.2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Williams v Hainje*,
375 Fed Appx 625, 628 (7th Cir 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Wimberly v. U.S. Dep't of Edu c.*,
2013 WL 6123172 (S.D.N.Y. Nov. 21, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wood v. Capital One Services, LLC*,
2010 WL 2473854, 4 (N.D.N.Y. Jun 18, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*Young v. U.S.*,
535 U.S. 43, 49 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

## PRELIMINARY STATEMENT

Ms. Crawford showed that the Order erred in denying her standing based on inadvertent non-disclosure in the 2006 bankruptcy because (a) the filing was under Chapter 13, and she never lost standing; (b) that bankruptcy was dismissed, not discharged, and 11 U.S.C. §349 revested claims in her; and (c) she disclosed the claims in the refiled bankruptcy two months later.

Defendants argue that Chapter 13 standing exists only for disclosed claims. This contradicts *Olick v. Parker & Parsley Petroleum Co.*, 145 F.3d 513, 515 (2nd Cir. 1998).   Defendants say nothing about revesting under Section 349.

Defendants contend that the *only* cure for non-disclosure in a dismissed bankruptcy is to reopen *that* bankruptcy; even the trustee in a refiled bankruptcy cannot assert those claims.  In other words, those undisclosed claims hover unmoored in the sky, inaccessible to debtor, creditor, or trustee.  This would only serve to immunize wrongdoers, a result contrary to law, logic and even common sense.

Defendants then assert that Ms. Crawford's 2006 non-disclosure was intentional so that she could pursue these claims for her own, instead of creditors', benefit.  Defendants ignore that Ms. Crawford disclosed these claims in the refiled

1

2007 bankruptcy,[1] long before she brought this action.  Further, no creditor

objected to the 2007 dismissal or the trustee's abandonment in the 2011

bankruptcy.  Defendants say nothing about what Ms. Crawford  stood to gain by

disclosing these claims in the 2006 bankruptcy: her home and significant

damages!

    With respect to judicial estoppel, Defendants first claim that the assertion of

undisclosed claims is an "inconsistent position".  But the inconsistency here was

between the 2006 and 2007 bankruptcies, not with this lawsuit.  Second, they

contend that bankruptcy "dismissal" was the  "adoption" by that Court of her non-

disclosure.  But that could be only in cases of intentional concealment; not so here.

Third, they argue, Ms. Crawford derived an "unfair advantage" by the automatic

stay, and by pursuing these claims for herself.  However, the "unfair advantage"

must be in *this* action over *these* Defendants; none exists.  Moreover, there is no

"risk of inconsistent results with its impact on judicial integrity,'" PB43 (*quoting In*

*re Adelphia*, 634 F.3d 678, 695-96 (2nd Cir. 2011).  Thus, judicial estoppel is

[1]Defendants litigated these claims and were on the verge of trial when the
2007 bankruptcy was dismissed.  They never disputed Ms. Crawford's standing
there.  Thus, it is Defendants who should be barred, on elementary principles of
waiver/estoppel, from disputing Ms. Crawford's standing several years later.
*United States v Smith*, 2013 WL 6576791 (S.D.N.Y. Dec. 4, 2013) ( Waiver
requirement); *Citibank N.A. v City of Burlington*, 2013 WL 5739757 (D. Vt. Oct.
22, 2013) (Estoppel requirements)

inapplicable.

Ms. Crawford showed that summary judgment on liability against Defendants was proper given Defendants' (a) refusal to provide deposition testimony concerning their transactions with her so that her assertions stood uncontroverted, and (b) sustained pattern of discovery misconduct warranting litigation-ending sanctions. Defendants point to the Kollers/Decarolis' affidavits which dispute some of Ms. Crawford's assertions. But those affidavits cannot rectify Defendants' default: Defendants didn't designate Kollers/Decarolis as 30(b)(6) representatives.

With respect to their discovery misconduct, Defendants argue that sanctions refusal was within the District Court's discretion. But under the circumstances here, that refusal was clear error.

Defendants also raise a slew of other objections, none of which survive scrutiny. Accordingly, the Appeal should be allowed.

# ARGUMENT

I.   <u>Ms. Crawford Has Standing</u>[2]

    A.   *Chapter 13 Debtor May Have Standing For Undisclosed Claims*

Defendants argue that even under Chapter 13, Ms. Crawford could have standing only if the claims had been disclosed.  Defendants' argument contravenes *Olick*, 145 F.3d at 515.  *Accord,  Taylor v City of New York*, 958 N.Y.S.2d 311 (N.Y. Sup. 2010) ("this court follows *Olick* and its progeny holding that a Chapter 13 debtor has capacity to sue on a cause of action even if that claim was not listed as an asset in the bankruptcy proceeding"); *Assn. Resources, Inc. v Wall*, 298 Conn 145, 166 (2010) (non-disclosure "does not preclude the assertion of that claim in proceedings instituted after the dismissal of the bankruptcy proceedings").

Defendants' cases involved discharge, not dismissal; moreover, those non-disclosures were in bad faith.  For example, in *Cowling v Rolls Royce Corp.*, 2012 WL 4762143, *4 (S.D. Ind Oct. 5, 2012), DB14, the debtor didn't disclose claims

_____

[2]Contrary to Defendants' assertion, DB13, Ms. Crawford raised this in the District Court.  Dkt.#78 (District Court) at 26-27.

Even otherwise, this Court may consider legal arguments for the first time where "necessary to avoid a manifest injustice or where the argument presents a question of law and there is no need for additional fact-finding," *Hirsch v Citibank, N.A.*, 2013 WL 5716397 (2d Cir Oct. 22, 2013)(citation omitted).

which he asserted while his bankruptcy was pending, violating "his continuing duty to disclose."  The same occurred in *Dorado v Shea Homes Ltd. Partnership*, 2011 WL 3875626 (E.D. Cal Aug. 31, 2011):  that debtor's underlying mortgage had been "submitted to the supervision and control of the Trustee."

B.    *Defendants Misread* **Currithers**

Defendants contend that standing "evaporates when the bankruptcy closes," DB16 (*quoting Currithers v FedEx Ground Package Sys., Inc.*, 2012 WL 380146 (E.D. Mich Feb. 6, 2012)), and since the 2006 bankruptcy was not pending when Ms. Crawford brought these claims, she is barred.  Defendants err.

*Currithers* also involved a discharge, not a dismissal.  *Id.*, *6.  Its reference to "bankruptcy closes" thus refers to discharge.

In fact, *Currithers* is squarely in Ms. Crawford's favor:

> Judicial estoppel . . should not be applied in cases of conduct amounting to nothing more than mistake or inadvertence, and the Court should also consider whether there is an absence of bad faith.

*Currithers,* 2012 WL 380146, *5 (citations omitted).[3]

---

[3]As that Court reiterated, good faith is shown by "attempts to correct the initial omission. . . [T]he extent of these efforts, together with their effectiveness, is important," *id*., *citing Lewis*, 141 F. App'x at 424.  "[T]he timing of [debtor's] effort is also significant." *Id.,* (*citing White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 480 (6th Cir.2010)).  These factors favor Ms. Crawford.

C.    *Defendants' Reliance Upon **Kunica** is Misplaced*

In *Kunica v. St. Jean Financial*, 233 B.R. 46 (S.D.N.Y. 1999), the dismissal was the "functional equivalent of a discharge," PB40-41.  Defendants don't address this critical issue; hence, their reliance upon *Kunica*, DB16, is misplaced.

Cases barring standing due to non-disclosure involved affirmative debtor misconduct.  *Chartschlaa v Nationwide Mut. Ins. Co.*, 538 F3d 116, 12o (2d Cir 2008) ("clearly not inadvertent"); *Best v MetLife Auto and Home Ins. Co.*, 7 Misc 3d 242, 244 (Sup Ct 2004) ("nine separate bankruptcy petitions . . abuse of the bankruptcy system");[4] *Potruch & Daab, LLC v Abraham,* 97 A.D.3d 646, 647 (2d Dept 2012)[5] ("*under the circumstances of this case*," dismissal irrelevant)[6];

---

[4]*Nationwide Assocs. Inc., v. Epstein*, 24 A.D.3d 738 (2nd Dep't 2005), DB17, is unhelpful.  As the Connecticut Supreme Court observed:

> . . *B.N. Realty Associates* is more persuasive. . . *Nationwide Associates, Inc*., is a summary decision that is not informative with respect to the nature or progress of the bankruptcy proceedings therein, and fails to account for either 11 U.S.C. § 349(b)(3) or the court's observation in *Kunica* that, in that case, the dismissal was the "functional equivalent" of a discharge.

*Assn. Resources, Inc v Wall*, 298 Conn 145, 168 (2010).

[5]While *Potruch* debtor filed a second bankruptcy disclosing claims, as that Court noted, he didn't submit the full schedule or any evidence of the bankruptcy's ultimate disposition.  That is not the case here.

[6]All emphasis in quotations are supplied.

6

*Jackson v Hancock & Can., L.L.P.*, 245 S.W.3d 51, 57 (Tex App 2007) ("intent to play fast and loose with the courts . . inferred"); *Omegbu v Nicholson*, 283 Wis 2d 508 (Wis. App. 2005) (after trustee warning, claims not disclosed although schedules amended).

D.    *The 2006 Non-Disclosure Was Inadvertent*

Defendants boldly assert that the 2006 non-disclosure was not "innocent." This was the District Court's "factual conclusion," they say, which was not "clear error," DB21.

Defendants point to *nothing* in the record to support their assertion.  A baseless "factual conclusion" is the definition of "clear error."  *See, e.g., CARCO GROUP, Inc. v Maconachy*, 718 F.3d 72, 80 (2d Cir 2013) ("unable to locate the particular bases in the trial record that would support the Court's conclusion . .").

Defendants posit that Ms. Crawford had "improper motives" because she is now pursuing the claims for her own, not her 2006 creditors', benefit, DB22.  Put bluntly, this is laughable.

The 2006 creditors were part of 2007 and 2011 bankruptcies, except those already paid off.  Even Defendants don't claim that 2007/2011 disclosures were deficient.  Further, no creditor objected to the 2007 dismissal or the 2011 Trustee's abandonment.

Besides, Ms. Crawford's economic losses alone exceed $1 million. A824. With non-economic losses, her damages could run well over $5 million, quite apart from punitive damages. Given this, Defendants' suggestion that she would seek to avoid payment of about $4,600 in 2006 loans[7] is ridiculous. She paid $2,700 in attorneys' fees alone, A216.

Defendants' argument that innocent non-disclosure is "legally irrelevant to the issue of standing," DB22, is meritless. Both cases they cite - *In re Costello*, 255 B.R. 110 (E.D.N.Y. 2000), and *Schafer v Decision One Mortg. Corp.*, 2009 WL 1532048 (E.D. Pa May 29, 2009) - involved (a) a discharge, not dismissal; and (b) Chapter 7, not Chapter 13, bankruptcies.

II.    Defendants Ignore Section 349's Revesting Provisions

Defendants contend that undisclosed claims remained in the 2006 bankruptcy estate, were not part of the 2007 or 2011 estates, and hence unaffected

---

[7]The 2006 loans were those of (a) Defendants, (b) Citi-Auto for $13,780, A235, secured by a $10,000 car, A234; (c) real estate taxes, 16,000, A237; (d) small loans totaling $879, A238-39; and (d) student loans of $84,000, A239.

The student loans were not dischargeable, *see, e.g., In re Desormes,* 2012 WL 4106765 (D. Conn. Sep. 18, 2012); *Wimberly v. U.S. Dep't of Educ.*, 2013 WL 6123172 (S.D.N.Y. Nov. 21, 2013). Neither were the taxes, *see*, *e.g., United States v. Alfano*, 34 F. Supp. 2d 827, 838 (E.D.N.Y. 1999); *In re Marfin Ready Mix Corp.*, 220 B.R. 148 (E.D.N.Y. 1998).

Thus, the only creditors, other than Defendants, were Citi Auto for $3,780 and small creditors for $879.

by developments therein.  Defendants cite no authority therefor.[8]

Further, Defendants' contention contradicts Section 349, which mandates "revesting" of claims on the debtor upon bankruptcy dismissal.  Indeed, Defendants' contention, if upheld, is capable of much mischief: Even the trustee in the refiled bankruptcy would be unable to pursue claims undisclosed in a prior, dismissed bankruptcy.  That benefits neither debtors nor creditors, but only insulates wrongdoers, contrary to the purpose of bankruptcy laws.  *In re Gen. Growth Properties, Inc.*, 409 B.R. 43, 69 (Bankr S.D.N.Y. 2009) ("principal purpose of bankruptcy law is to protect creditors' rights," citation omitted); *Superintendent of Ins. for N.Y. v. Ochs (In re First Cent. Fin. Corp.)*, 377 F.3d 209, 217-18 (2d Cir. 2004) (same); *Gochenour v Cleveland Terminals Bldg. Co.*, 118 F2d 89, 94 (6th Cir 1941) (not to "furnish immunity to wrongdoing").

The "estate" is a fiction of bankruptcy law to protect creditors' interests, not immunize wrongdoers.  As this Court held in the very case cited by Defendants, DB24,

---

[8]Contrary to Defendants' assertion, DB25, the 2011 Bankruptcy Court never held that every bankruptcy filing creates a new estate independent of an earlier bankruptcy.  Instead, that Court readily agreed that the 2011 trustee may assert the earlier undisclosed claims.  A1042 ("Sure, for the creditors.  That's fine, I agree with that, but this isn't for the Estate.").  It merely felt bound by the Order.  A1029 ("I don't see how I'm not bound by that decision"); A1062.

> The Board has no right to a dismissal of a claim . . simply because the claim might belong to the bankruptcy estate rather than to Ayazi.

*Ayazi v New York City Bd. of Educ.*, 315 Fed Appx 313, 315 (2d Cir 2009).[9]

III.   Judicial Estoppel Is Inapplicable

   A.   *No Inconsistent Position*

The inconsistency here was between the 2006 and 2007 bankruptcies, not between the 2006 bankruptcy and this action.  Defendants submit that the 2006 non-disclosure nevertheless trumps the 2007 disclosure, and hence, is "inconsistent" with this action.

Defendants cite no authority.  Unlike their cases, Ms. Crawford not only disclosed but *actually litigated* her claims in the refiled bankruptcy long before Defendants challenged her standing.

Further, Defendants' cases involved *intentional* non-disclosure.  *Azuike v BNY Mellon*, 2013 WL 3917264 (S.D.N.Y. July 30, 2013) (Pre-petition EEOC charge concealed); *Neely v RMS Residential Mortg. Solution, L.L.C.*, 2013 WL 752636, *6 (E.D.N.Y. Feb. 26, 2013) (debtor "aware of the Assignment" or "suspected its existence" pre-bankruptcy); *Thomas v JP Morgan Chase, N.A.*,

---

[9]Defendants' argument that even the bankruptcy trustee was barred by Ms. Crawford's lack of standing is wrong.  *In re Flugence*, 738 F3d 126 (5th Cir 2013).

2012 WL 2872164 (E.D.N.Y. July 11, 2012), *affd sub nom. Thomas v Barrett,*

*Daffin, Frappier, Turner & Engel LLP*, 532 Fed Appx 10 (2d Cir 2013) (non-

disclosures "cannot be deemed to be the result of inadvertence or mistake.").

> Judicial estoppel is . . not intended to eliminate all
> inconsistencies no matter how slight or inadvertent they may
> be.

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v Gen. Motors Corp.*, 337 F3d 314,

319 (3d Cir 2003) (citation omitted).

B.    *No "Adoption" By Court of Earlier Position*

Defendants argue that the 2006 dismissal was an "adoption" of the non-

disclosures by that Court; had that trustee/Court known these claims, "there may

have been some action taken other than dismissal," DB31.

Defendants' speculation is belied by the facts.  The 2007 and 2011 trustees

knew about the claims; the former did nothing and the latter abandoned them.

Moreover, "Absent *success* in a prior proceeding, a party's later inconsistent

position introduces no 'risk of inconsistent court determinations.'" *New*

*Hampshire v Maine*, 532 US 742, 750-51 (2001) (citation omitted).  "Dismissal"

of a bankruptcy is not "success".  To paraphrase this Court,

> [T]his is not a case where 'the risk of inconsistent results with
> its impact on judicial integrity is certain,' warranting judicial
> estoppel.

11

*In re Great Atl. & Pac. Tea Co., Inc.*, 526 Fed Appx 25, 28-29 (2d Cir 2013) (citation omitted).

Bankruptcy dismissal meets this requirement *only* where necessary to protect judicial integrity, *i.e.,* in cases of intentional non-disclosure. *Myers v Bimbo Bakeries USA, Inc.*, 2011 WL 1240095 (E.D.N.Y. Feb. 10, 2011), *report and recommendation adopted*, 2011 WL 1211603 (E.D.N.Y. Mar. 30, 2011) ("One of the main purposes of the doctrine—to protect the integrity of the judicial system, and the bankruptcy process in particular, in ensuring full and honest disclosure—would be frustrated if the doctrine were not applied here."); *Williams v Hainje*, 375 Fed Appx 625, 628 (7th Cir 2010) ("Williams's argument that his omission was inadvertent is unavailing."); *Hamilton v State Farm Fire & Cas. Co.*, 270 F3d 778, 784 (9th Cir 2001) ("Hamilton is precluded from pursuing claims about which he had knowledge, but did not disclose, during his bankruptcy proceedings"); *In re Angelo*, 480 B.R. 70, 94 (Bankr D Mass 2012) (omissions "part of a thoroughgoing pattern of deception and exclusion").  Ms. Crawford cannot be seriously accused of intentional misconduct.

C.    *Defendants Misconstrue the "Unfair Advantage" Requirement*

Defendants argue that "unfair advantage" to Ms. Crawford *without* any "unfair detriment" to them suffices.  Ms. Crawford's "unfair advantage," they say,

12

was (a) being "able to hide" claims from 2006 creditors, DB31, and (b) protecting "herself from creditors" by the automatic stay, DB32.

Defendants are confused.  The issue is "whether the nonmoving party 'would gain an unfair advantage *in the litigation* if not estopped." *Veh. Mkt. Research, Inc. v Mitchell Intern., Inc.*, 2012 WL 5512340 (D Kan Nov. 14, 2012) (*quoting Eastman v. Union Pac. R.R.*, 493 F.3d 1151, 1156 (10th Cir. 2007).  Thus, "unfair advantage" to Ms. Crawford is to be construed in the context of *this* action.

Whether Ms. Crawford reaped some speculative benefits from the non-disclosure is therefore irrelevant; every nondisclosure may be said to benefit the debtor by the automatic stay.  And here, neither did Ms. Crawford get an "unfair advantage" nor were Defendants "potentially prejudiced", PB43 and cases therein.

Besides, Defendants ignore Ms. Crawford's full disclosure in the refiled bankruptcy two months later.  Defendants' cases bear no semblance.  *HPG Corp. v Aurora Loan Services, LLC*, 436 B.R. 569, 577-79 (E.D. Cal 2010) ( debtor "files successive petitions and obtains successive stays without full disclosure of all assets, the debtor derives an unfair advantage if he can *later* recover on undisclosed claims"); *Williams*, 375 Fed. Appx. 625 (intentional non-disclosure; "failed to disclose the potentially lucrative claim *twice*"); *Coffaro v Crespo*, 721 F Supp 2d 141, 147 (E.D.N.Y. 2010) ("attempting to reclaim an asset that he

13

*consciously* omitted in his bankruptcy proceedings years ago").

D.     *Ms. Crawford Was Unaware of Her Claims in 2006*

Defendants assert that Ms. Crawford knew of her claims, since (a) in December 2004, Ms. Crawford received only $7,000 instead of the promised $35,000; (b) she had not received the "settlement documents"; and (c) Defendants' monthly account statements and default notices reflected loan amounts, interest rates, and monthly payments higher than promised, DB37.

Whether considered in isolation or cumulatively, these are plainly insufficient.  Getting a lesser amount than that promised as a bridge loan is no ground to suspect mortgage fabrication.  No mortgage was contemplated, so Ms. Crawford didn't expect "settlement documents."  And Defendants' mailings were to Piermont, New York when Ms. Crawford resided in the Dominican Republic.

Ms. Crawford came to know the facts only when she received the closing documents in the 2007 bankruptcy.  That is unlike *In re Flugence*, 738 F.3d 126, DB37, where the debtor never disclosed post-petition claims to the bankruptcy court for over 1 ½ years before discharge.

Further, attorney Lewis's misconduct is relevant for purposes of the "equitable doctrine" of judicial estoppel, *Intellivision v Microsoft Corp.*, 484 Fed Appx 616, 619 (2d Cir 2012), especially given Ms. Crawford's hectic schedule,

14

and academic/employment commitments.  PB 10n.5.  "[C]ourts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine."  *Burnes v Pemco Aeroplex, Inc.*, 291 F3d 1282, 1286 (11th Cir 2002).

    In Defendants' cases, debtors knew of their claims before  bankruptcy. *Negron v Weiss*, 2006 WL 2792769 (E.D.N.Y. Sept. 27, 2006) ("She argues on the one hand that she did not list the Apartment in the bankruptcy proceeding because she did not have proof of legal ownership and because she did not realize that she had an equitable right to the Apartment, but argues on the other hand that she and her husband always knew that they really owned the Apartment. It is just this sort of argument that judicial estoppel is designed to prevent."); *Eastman v Union Pac. R. Co.*, 493 F3d 1151, 1159 (10th Cir 2007) (debtor sued employer and others for serious personal injuries; "'impossible to believe that such a sizable claim ... could have been overlooked when [the debtor] was filling in the bankruptcy schedules,'" citation omitted); *Grainger v Meritan, Inc.*, 2011 WL 824484 (S.D. Miss Mar. 2, 2011) ("no doubt that she was aware of the underlying facts giving rise to her discrimination claims at the time she filed her bankruptcy petition").

    Defendants posit a "motive to conceal," DB38, based on nothing more than the non-disclosure itself.  That is bootstrapping.

15

With respect to the cure by disclosure in 2007 and 2011 bankruptcies, PB44-45, 67, Defendants contend that those cases were on equitable estoppel, which, unlike judicial estoppel, requires detrimental reliance, DB35 n.9. Defendants err; both cases rejected applicability of judicial estoppel as well as equitable estoppel. *Price v. Kuchaes*, 950 N.E.2d 1218, 1227 (Ind. App. 2011); *Shewmaker v. Etter*, 644 N.E.2d 922, 931 (Ind. App. 1994)) .

Defendants' assertion that the 2011 bankruptcy disclosures were after Ms. Crawford was "caught in the non-disclosure," DB40, is ludicrous.  No one "caught" Ms. Crawford; she voluntarily disclosed the claims in 2007, long before Defendants' challenge herein.  If anything, Defendants' failure to dispute her standing in the 2007 adversary proceedings bars them on grounds of waiver/estoppel.

It merits repetition that "judicial estoppel is unwarranted unless the party changed his or her position in bad faith - *i.e.*, with intent to play fast and loose with the court."  *In re Kane*, 628 F3d 631, 638 (3d Cir 2010).  That cannot be responsibly said of Ms. Crawford.

"Finally, a district court may not employ judicial estoppel unless it is 'tailored to address the harm identified' and no lesser sanction would adequately remedy the damage done by the litigant's misconduct."  *Krystal*, 337 F3d at 319.

16

No "harm" was done by the 2006 non-disclosure, except to Ms. Crawford herself.

IV.    <u>At the Very Least, Ms. Crawford Should Be Granted Relief Under Rule 60(b)</u>

While the Order didn't specify just how undisclosed claims could revest in Ms. Crawford "by operation of law," the 2011 bankruptcy trustee's notice of abandonment[10] did so revest under 11 U.S.C. § 554, PB64-67; hence 60(b) relief was proper.  Defendants simply reiterate that the Second Order was "fully supported by applicable law," DB41.  That is unhelpful.

Defendants' contention that Ms. Crawford's 60(b) motion was "untimely," DB41, is baseless.  The revesting occurred with the Trustee's abandonment only on May 23, 2012, A919.  That bankruptcy being pending, Ms. Crawford sought to pursue her claims in that Court, which denied her relief on December 10, 2013, A1067, the very day she sought 60(b) relief, A15(#91).  Thus, no delay exists.

V.    <u>Summary Judgment On Liability Should Be Granted to Ms. Crawford</u>

A.    *Defendants Did Not Designate Kollers/Decarolis As Their 30(b)(6) Representatives, And Cannot Escape the Consequences Of Their Refusal to Provide Testimony*

Defendants were precluded from disputing Ms. Crawford's assertions

---

[10]"Abandonment is not a process to be taken lightly. Once an asset is abandoned, it is removed from the bankruptcy estate, and this removal is irrevocable except in very limited circumstances."  *Chartschlaa*, 538 F3d at 123.

because they (a) refused to designate a deponent to address their transactions with Ms. Crawford; and (b) their 30(b)(6) witnesses' testimony was binding on them.

Defendants say nothing about their refusal to designate. Instead, they assail Ms. Crawford's "gall" in not deposing two non-parties, Koller and Decarolis, DB56.

Defendants miss the point. The issue is not whether Ms. Crawford could have obtained information about the transaction from Koller/Decarolis. She didn't need that; she knew what happened. Rather, the issue is Defendants' refusal to provide their *institutional* knowledge and/or to take an *institutional* position on her assertions, PB 49-51 (*citing Reilly v. Natwest Markets Group*, 181 F.3d 253 (2nd Cir. 1999) and other cases).

Defendants could have - but *chose not to* - designate Koller/Decarolis as their designees, PB49-50. This is understandable, because then, Defendants would be bound by Koller/Decarolis' testimony, PB51-53. Having made that choice, Defendants cannot now backtrack and blame Ms. Crawford.

Thus, Kollers/Decarolis' affidavits cannot rescue Defendants, and the "sham affidavit" doctrine is unavailing. In *Nelson v City of Davis*, 571 F3d 924 (9th Cir. 2009), DB57, a civil rights case arising from police shooting of pepperballs, *nisi prius* "decided that Nelson was not an intended target . . '[a]ny inference in that

18

regard that may be drawn from the equivocal testimony of others . . is nullified by [Nelson's] own clear version of what transpired during the period immediately surrounding his injury.'" The Ninth Circuit reversed, observing that Nelson was not precluded "'from elaborating upon, explaining or clarifying *prior testimony* elicited by opposing counsel on deposition,'" 571 F3d at 928 (citation omitted). *Accord, Thompson v Donahoe*, 2013 WL 3286196 ("N.D. Cal June 27, 2013) (same). Here, Defendants *refused* to provide any testimony.

Defendants' refusal was equivalent to defaulting in responding to the complaint. Where an answer is not filed, a litigant *cannot* submit any evidence to contravene the complaint. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981) (factual allegations of complaint deemed true).

    B.    *Litigation-Ending Sanctions Were Appropriate*

Defendants' "astonishingly cavalier approach to discovery," *Crawford*, 261 F.R.D. at 38, persisted throughout the litigation, including production of several inadequately prepared 30(b)(6) witnesses (after being sanctioned), and non-production of critical documents; hence, litigation-ending sanctions were appropriate, PB51-61. Further, the Order's failure to consider adverse inferences against Tribeca on grounds of Kollers' formal employment by Franklin was clearly erroneous, PB56, especially given the complete integration of operations, PB56-

58.

Defendants argue that such sanctions are within the District Court's discretion.  True, but as their own case, *Salahuddin v Harris*, 782 F2d 1127, 1132 (2d Cir 1986), DB58, reiterated, dismissal is proper in cases of "willfulness, bad faith, or any fault."

Even Defendants do not dispute that their sustained discovery failures were wilful.  The Order's refusal to impose litigation-ending sanctions was abuse of discretion, PB60-61.

## VI.    Defendants' Other Objections Are Unavailing

### A.    *Defendants Waived the Defense of Statute of Limitations By Failing to Plead It In Their Answer*

"The statute of limitations is an affirmative defense that is waived if not raised."  *Kropelnicki v Siegel*, 290 F3d 118, 130 (2d Cir 2002) (citations omitted). Fed.  R.  Civ.  P., Rule 8(c).  Defendants never pleaded this affirmative defense, and "therefore waived any such defense."  *Resnick v. Vantage Deluxe World Travel, Inc.*, 2004 WL 2601548, 1  (S.D.N.Y. Nov 12, 2004).  *Accord, Doe v. Constant*, 354 Fed.Appx. 543, 545, 2009 WL 4255527, 1 (2nd Cir. 2009).

### B.    *In Any Event, The Claims Are Not Time-Barred*

Waiver apart, "The statute of limitations is an affirmative defense on which

the defendant bears the burden of proof." *Ellington Long Term Fund, Ltd. v. Goldman, Sachs & Co.*, 2010 WL 1838730, 2 (S.D.N.Y. May 4, 2010) (*citing* Fed.R.Civ.P. 8(c); *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir.1995). Defendants fail this burden.

In any event, Ms. Crawford came to know of the fabricated mortgage only upon receiving the closing documents in 2007, A380. She promptly asserted these claims, A756.[11] Thus, the statute of limitations did not commence until 2007.

Further, the time-bar was equitably tolled by Defendants' fraudulent concealment. Defendants didn't send the closing documents, and sent the monthly statements to an address that they knew was not Ms. Crawford's residence. Given her hectic schedule, PB10 n.5, she could not have known about the claims before December 2007. *Veltri v. Bldg. Serv. 32b-J Pension Fund*, 393 F.3d 318, 322 (2d Cir.2004) (active concealment tolls limitation).

C.    *Res Judicata Is Inapplicable*

*Res judicata* is an "affirmative defense[] that must be raised, or [is] considered waived," *Diaz v Goord*, 2011 WL 6012609, *2 (W.D.N.Y. Dec. 1,

---

[11]That bankruptcy was dismissed on July 15, 2008, A686, four days after this action commenced (July 11, 2008). "It is hornbook law that limitations periods are 'customarily subject to 'equitable tolling,'" *Young v. U.S.*, 535 U.S. 43, 49 (2002) (citation omitted).

21

2011); *accord, McKithen v Brown*, 481 F3d 89, 104 (2d Cir 2007).  Under Rule 8, Fed. R. Civ. P., "[p]reclusion ... is not a jurisdictional matter." *Exxon Mobil*, 544 U.S. at 293. *Scherer v. Equitable Life Assurance Soc'y*, 347 F.3d 394, 398 (2d Cir.2003) ( "waiveable").

Defendants failed to plead *res judicata* in their Answer, thereby waiving it. *Nat'l Mkt. Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 526 (2d Cir.2004).

In any event, under New York law, a default judgment does "not determine the merits of the issues raised and, therefore, did not constitute the law of the case" *Persaud v. Pharsi*, 70 A.D.3d 660, 661 (2 Dept. 2010).  The State Court judgment against Ms. Crawford was entered on default.

Besides, *res judicata* does not apply in cases of fraud.  A "judgment of a court having jurisdiction of the parties and of the subject matter operates as *res judicata* <u>in the absence of fraud</u>," *Parker v Hoefer*, 2 N.Y.2d 612, 616 (1957); *EDP Medical Computer Systems, Inc. v. U.S.*, 480 F.3d 621, 626 (2nd Cir. 2007). Here, the default judgment was based upon Defendants' false assertions about service of process, due execution of the Mortgage and the underlying Note

In any event, the default judgment involved <u>only</u> the Mortgage, whereas Ms. Crawford's instant claims involve Defendants' systematic violation of several federal laws such as RICO, ECOA, and TILA, which are independent of the

22

validity of the Mortgage itself.  The RICO claim, for example, arises out of Plaintiff's participation in a racketeering enterprise.  The ECOA claims arise out of their saddling Ms. Crawford with a loan materially different from that she sought, and failing to issue the mandatory adverse action notice.  The TILA claims arise out of their failure to provide the requisite disclosures, and subsequent failure to rescind upon demand.  The GBL 349 claims arise out of Defendants' consumer-oriented deceptive practice.

These claims have nothing to do with the validity of the Mortgage itself.  Thus, *res judicata* is inapplicable.[12]

D.    *Defendants Misconstrue the ECOA Claim*

Defendants contend that Ms. Crawford has not proved intentional discrimination against "her group," DB45.  But the ECOA claim is based on Defendants' failure to give the mandated adverse action notice, since Defendants extended credit different from what Ms. Crawford sought. 15 U.S.C. §1691(d)(2); Reg B, 12 C.F.R. §202.9(a)(1)(i).

A "creditor's failure to provide a written rejection notice is actionable under the ECOA."  *Costa v. Mauro Chevrolet, Inc.*, 390 F.Supp.2d 720, 728 (N.D.Ill.

---

[12]Defendants argue that rescission is unavailable.  But that issue need not detain us now; the appropriate relief to be awarded to Ms. Crawford is for the District Court upon remand.

2005); *accord, Stoyanovich v. Fine Art Capital LLC*, 2007 WL 2363656, 3

(S.D.N.Y. Aug 17, 2007).

      E.    *Ms. Crawford's RICO Claims Are Proper*

      Defendants contend that the RICO claims are not viable since "no evidence"

exists of "pattern", "enterprise," management/operation, and conspiracy, DB46-51.

Given Defendants' stonewalling of discovery, this is akin to the "man who, having

killed his mother and father, throws himself on the mercy of the court because he

is an orphan," *Motorola Credit Corp. v Uzan*, 561 F3d 123, 129 n5 (2d Cir 2009)

(citation omitted).  In any event, these elements exist.

      1.    <u>The "Pattern" Requirement is Met</u>

      Defendants contend that since their mail and wire fraud were directed only

at Ms. Crawford, the "pattern" requirement is unmet.

      Defendants' misconduct was not restricted to Ms. Crawford.  A297-309.  It

included routine violations of State and Federal law, and repeated incredibly

reckless functioning quay mortgage financing.

      That apart,

> [T]he repeated infliction of economic injury upon a
> single victim of a single scheme is sufficient to establish
> a pattern of racketeering activity for purposes of civil
> RICO.

*In Liquid Air Corp. v. Rogers*, 834 F.2d 1297, 1300 (7th Cir. 1987), *cert. denied*, 492 U.S. 917 (1989); *accord, Columbus McKinnon Corp. v. HealthNow New York, Inc.*, 2006 WL 2827675, 11 (W.D.N.Y. Sep 29, 2006).

The number and variety of predicate acts, the length of time over which they were committed, and the occurrence of distinct injuries are significant. *Olive Can Co. Inc v. Martin*, 906 F.2d 1147, 1151 (7th Cir. 1990). Where each predicate act is related to the other by a common purpose, but represented "a discrete attempt to defraud," the pattern requirement is met. *Uniroyal Goodrich*, 63 F.3d at 523 -524; *accord, Hexagon Packaging Corp. v. Manny Gutterman & Associates, Inc.*, 1997 WL 323501, 12 (N.D.Ill. Jun 9, 1997). The existence of only one victim and one scheme suffices for a "pattern" where there are repeated economic injuries. *Uniroyal Goodrich*, 63 F.3d at 524.

Here, the first set of predicate acts concern the fraudulent conduct in the fabrication of the Mortgage. The distinct injury caused was the creation of a wrongful lien on Ms. Crawford's home, in addition to non-economic damages.

The second set concern Defendants' monthly reports to consumer credit reporting agencies such as Experian. This was obviously accomplished through

the use of interstate communication devices.[13]  The distinct injury this caused was the reduction in Ms.  Crawford's credit score, resulting in a loss of credit expectancy, higher interest rates, loss of promotional opportunities, and non-economic damages.

The third set concern Defendants' fraud on the State Court.  The distinct injury here was the extinguishment of Ms.  Crawford's title to her home, her legal expenses, threat of homelessness, and non-economic damages.

These predicate acts started in 2004, and continued well into 2013.  Moreover, these acts were related in the overall purpose of unlawfully defrauding Ms.  Crawford of her home.  Thus, the requirements of continuity and relatedness are met.  Defendants' utter failure to provide discovery precluded the uncovering of multitudes of other instances, but these suffice for present purposes.  *See Uniroyal Goodrich*, 63 F.3d at 520 -521.

### 2.    A Racketeering "Enterprise" Existed

Defendants assert that they didn't form a "criminal enterprise" with "unrelated entities," and hence, no "enterprise" exists.

---

[13]Also, Ms.  Crawford obtained her report electronically through the use of online facilities.  This use of interstate wires was foreseeable by Defendants, which suffices for wire fraud.  *OSRecovery, Inc. v. One Groupe Intern., Inc.*, 380 F.Supp.2d 243, 245 (S.D.N.Y. 2005).

However, "proof of various racketeering acts may be relied on to establish the existence of the charged enterprise." *United States v. Coonan*, 938 F.2d 1553, 1559-60 (2d Cir.1991). Further, the evidence to establish enterprise and pattern "may in particular cases coalesce," *United States v. Turkette*, 452 U.S. 576, 583 (1981); *United States v. Eppolito*, 543 F.3d 25, 50 (2d Cir.2008).

> The existence of a RICO enterprise may be "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." . . "[A]n association-in-fact is oftentimes more readily proven by what it does, rather than by abstract analysis of its structure." . . "An 'individuals associated in fact' enterprise, 18 U.S.C. § 1961(4), may continue to exist even though it undergoes changes in membership."

*U.S. v. Payne*, 591 F.3d 46, 60 (2nd Cir. 2010) (citations omitted).

Here, the enterprise comprised of Defendants, Lenders' First Choice and persons such as Decarolis who provided fraudulent notarial and/or legal services. Defendants' discovery failures preclude Ms. Crawford from establishing the full scope of this enterprise, although the regularity of the enterprise's function is clear from the "Broker Price Opinion" delivered on a "Rush" basis for expeditious mortgage fabrication. A825.

Defendants' nonchalance to legal requirements and disciplinary proceedings in various States are relevant for this:

27

> "[E]vidence of prior uncharged crimes and other bad acts
> that were committed by defendants[ ]" may be "relevant
> ... to prove the existence, organization and nature of the
> RICO enterprise, and a pattern of racketeering activity by
> each defendant [ ]." *United States v. Diaz*, 176 F.3d 52,
> 79 (2d Cir.), *cert. denied*, 528 U.S. 875 (1999).

*Payne*, 591 F.3d at 64.  Defendants had disciplinary proceedings and legal

infractions galore.  A299-300; A782-812.  And this list is incomplete due to

Defendants' discovery stonewalling.

### 3.    Defendants Managed/Operated the Enterprise

Defendants argue that the claims here are merely that Tribeca made "an

improper loan," DB50.  Since that was Tribeca's business, it was not operating a

"separate enterprise," *id*.[14]  This argument is baseless.

Defendants organized the enterprise, set up offices, and hired "loan officers"

such as Koller.  They obtained mortgage licenses - or nonchalantly functioned

without such licenses.  They issued mortgages with no guidelines, no manuals, and

no set procedures.  In other words, Defendants set up the infra-structure for the

fraud.  Koller and others acted with *actual* authority in perpetrating the RICO

predicate acts.  *See Connors v. Lexington Ins. Co.*, 666 F.Supp. 434, 453

(E.D.N.Y.1987) (even legitimate business may be held liable under RICO).

---

[14]Tellingly, Defendants exclude Franklin in this, and thereby implicitly
concede that Franklin managed the enterprise.

Moreover, Defendants benefitted from the racketeering scheme in the form of enormous fees, charges, and "closing costs." *See D & S Auto Parts, Inc. v. Schwartz*, 838 F.2d 964, 967 (7th Cir.1988), *cert. denied*, 486 U.S. 1061 (1988) (employer liable under RICO for action undertaken with the intent of benefitting employer).

Defendants, through this enterprise, manufactured thousands of mortgages, see, e.g., A830 (portfolio in billions of dollars). Their management/participation is clear.

### 4.    Defendants Are Liable For Conspiracy under 1962(d)

> [C]onspiracies are rarely evidenced by explicit agreements, but nearly always must be proven through "inferences that may fairly be drawn from the behavior of the alleged conspirators," *Michelman v. Clark–Schwebel Fiber Glass Corp.*, 534 F.2d 1036, 1043 (2d Cir.1976); *see, e.g., United States v. Snow*, 462 F.3d 55, 68 (2d Cir.2006) ("conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with ... precision")

*Anderson News, L.L.C. v Am. Media, Inc.*, 680 F3d 162, 183 (2d Cir 2012), *cert denied*, 133 S Ct 846 (2013). "Furthermore, the defendants need not have agreed to actually commit the predicate acts themselves or even to participate in the commission of those acts so long as they agreed that the acts would be committed on behalf of the conspiracy." *Gagan v. American Cablevision*, 77 F.3d 951, 961

(7th Cir. 1996).  The same evidence may also prove agreement to engage in racketeering.  *U.S. v. Pizzonia*, 577 F.3d 455, 463 (2nd Cir. 2009); *see also United States v. Martino*, 648 F.2d 367, 382-83 (5th Cir.1981) ("Prosecution of RICO substantive and conspiracy charges expectedly involves considerable overlap in the evidence.")

Here, Defendants had agreements which they didn't produce.  In any event, the coordinated activities suffice to show the conspiracy.[15]

F.    *Defendants Are Liable for Fraud*

Defendants dispute the "cause-and-effect relationship" between their misrepresentations and the "alleged injury", DB52.  To paraphrase another Court, "At best (*i.e.*, if defendants are really serious in what they say), it displays a propensity to engage in sophistry worthy of a theologian of the Middle Ages." *Collisson & Kaplan v. Hartunian*, 26 Cal. Rptr. 2d 786, 790 (Cal. App. 2 Dist. 1994).

Defendants made misrepresentations about a bridge loan.  Ms. Crawford relied on those misrepresentations to provide "specimen signatures" at JFK

---

[15]Defendants' assertion that there is "no evidence" that Franklin "had anything to do" with the misconduct at issue, DB53, is frivolous.  Franklin set-up and masterminded this racketeering enterprise, PB56-58. .

30

airport. Defendants fabricated a mortgage therefrom, resulting in Ms. Crawford's injuries. The reliance requirement is clearly met.

Defendants also say nothing about their fraud on the State Court. As this Court held while upholding racketeering convictions for similar misconduct,

> Litigants depend on the integrity of the conduct of participants in civil proceedings though disputing the validity of their opponents' claims to impose or resist civil liability. It is one thing to challenge the perception, memory, or bias of an opponent's witnesses; it is quite another for a party's lawyer and a witness to concoct testimony that they know has been wholly fabricated.

*U.S. v. Eisen*, 974 F.2d 246, 253 (2nd Cir. 1992).

G.    *At the Very Least, Defendants Are Liable for Negligent Misrepresentation*

Defendants disclaim a "special relationship," relying upon banker-customer cases, DB53. But Defendants contacted Ms. Crawford as a foreclosure rescuer, not as a banker; she did not seek them out to deposit money.

> "[T]here may be liability * * * where there is a relationship between the parties such that there is an awareness that the information provided is to be relied upon for a particular purpose by a known party in furtherance of that purpose, and some conduct by the declarant linking it to the relying party and evincing the declarant's understanding of their reliance"

*Grammer v. Turits*, 706 N.Y.S.2d 453, 455 (2 Dept. 2000) (citation omitted).

31

*Accord, Emerald Asset Advisors, LLC v Schaffer*, 2013 WL 5308800, *6

(E.D.N.Y. Sept. 18, 2013); *Truck-Lite Co., Inc. v. GS1 US, Inc.*, 2008 WL 833498,

2 (W.D.N.Y. Mar 27, 2008).

Here, Defendants claimed special expertise in bridge loans to forestall

foreclosures, A289.  Defendants knew that Ms. Crawford relied on their

representations about a bridge loan for purposes of ending the Chase foreclosure

action.  Defendants had a relationship of privity with Ms. Crawford, and

understood her total reliance upon them:  they asked for "specimen" signatures.

Thus, the "special relationship" requirement is met.

H.    *Defendants Are Liable Under Section 349, G.B.L.*

Defendants assail this claim on the ground that "there is no evidence" that

Defendants' "oral representations" are part of "any standard practice that could

affect consumers at large."  DB46.

But the 349 claim is <u>not</u> based on "oral representations."  It is based on the

widespread deceptive practices such as obtaining signatures under false pretenses;

creating mortgages through forgery; failing to timely and validly make all material

disclosures under federal law; imposing exorbitant "closing costs" without ever

informing consumers of the same; closing mortgage transactions without requisite

documents; having no compliance manuals or guidelines; failing to analyze  or

32

review loan officer recommendations concerning financing transactions; failing to conduct a proper background check, and/or failing to train loan officers before letting them loose on the unsuspecting public, and defrauding courts with false declarations.  The multitudinous disciplinary proceedings only buttress the widespread nature of Defendants' misconduct.

The impact on the public is also clear.  Defendants closed over 250 mortgage transactions in a year, A592, or over 1,000 transactions with 1,000 consumers from 2004-2007.[16]  Clearly, at issue is "a materially misleading consumer-oriented act or practice that resulted in the plaintiff's injury." *Wood v. Capital One Services, LLC*,  2010 WL 2473854, 4 (N.D.N.Y. Jun 18, 2010) (*citing Spagnola v. Chubb Corp.,* 574 F.3d 64, 74 (2d Cir.2009)).  Thus, Defendants are liable under GBL 349.

---

[16]Defendants had a loan portfolio of "a few billion dollars," A830.  Their size, and the record here, has given us a better understanding of the mortgage crisis.

## CONCLUSION

The Appeal should be allowed in entirety.

Dated: New York, New York          **Chittur & Associates, P.C.**
      January 21, 2014

                                      Sd/
                         By: Krishnan S. Chittur, Esq.
                         Central Westchester Business Park
                         500 Executive Boulevard Suite 305
                         Ossining, New York 10562
                         Tel: (914) 944-4400

                         Attorneys for Linda Crawford

## CERTIFICATE OF COMPLIANCE WITH FRAP 32(A)

Pursuant to Fed. R. App. P. 32(a)(7), I certify as follows:

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,954 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word Perfect in Times New Roman, 14 point font.

**CHITTUR & ASSOCIATES, P.C.**

Sd/

_____
By:   Krishnan Chittur, Esq. (KC 9258)
      500 Executive Blvd., Suite 305
      Ossining, New York 10562
      Tel: (914) 944-4400
      Email: kchittur@chittur.com
      Attorneys for Plaintiff-Appellant